### FIDELITY & DEPOSIT CO. OF MARYLAND v. LEIB et al.

#### No. 4306.

Circuit Court of Appeals, Third Circuit.

July 21, 1930.

BUFFINGTON, Circuit Judge, dissenting.

Francis B. Bracken and John Murdock Clarke, both of Philadelphia, Pa. (Morgan Lewis & Bockius of Philadelphia, Pa., of counsel), for appellant.

Thomas R. White, of Philadelphia, Pa., for appellee.

Before BUFFINGTON and DAVIS, Circuit Judges, and THOMSON, District Judge.

THOMSON, District Judge.

This is a bill in equity praying for discovery by Evans and the railway company of all sums received by them under a certain agreement and for payment by them to the plaintiff of the sum of $5,000.

The facts disclosed by the pleadings, and established with reasonable certainty by the evidence, present the following situation:

The defendant Leib, as general manager of the Schuylkill Railway Company, gave bond for the faithful performance of his duties, in the sum of $5,000, to the railway company, the Fidelity & Deposit Company, plaintiff, being surety on the bond, Leib agreeing to indemnify the surety against loss resulting from his suretyship.

For the purpose of paying taxes due the commonwealth of Pennsylvania, the railway company gave to Leib sixteen promissory notes aggregating $16,500 and a check for $1,000 drawn to the order of John H. Fertig, attorney for the commonwealth. Leib

became a defaulter by forging said notes and check, discounting the same in banks, and applying the proceeds to his own use. Notice was given by the railway company to the plaintiff in 1919 that Leib had defaulted in a sum exceeding $20,000 by reason of the said forgeries, appropriating to himself the proceeds. Although Leib denied the charges, the plaintiff, on May 12, 1919, paid the railway company the full amount of the surety bond, upon condition that the railway company would diligently prosecute its claims on the forged notes and check against the banks concerned, in such manner as seemed most expeditious to counsel for the railway company, and, in the event of a recovery from the banks or from Leib, of a sum more than sufficient, together with the sums paid on the bond, to fully compensate the railway company for its loss through said defalcation, the railway company would pay over such excess amount by way of reimbursing the plaintiff for the $5,000. In May of 1919 the railway company commenced suits against the banks, defenses were filed, and the cases ordered down for trial.

Prior to April, 1919, Leib had delivered to Powell Evans, president, and largely in control of the railway company, certain securities, the property of Leib, to secure a personal indebtedness of $1,500, due to Evans. Evans caused these securities to be sold at auction and purchased them for $950, which unquestionably was a grossly inadequate price. On February 11, 1920, the suit of the railway company against the Franklin National Bank was brought to recover $2,000 on one of the notes above referred to. During the trial of this case, an agreement was entered into between Evans (who appears to have been acting for himself and the railway company) and Leib. The contract was intended to provide for payment by Leib to the railway company of the amount of the suit against the Franklin National Bank and of all sums claimed by the Railway against all the other banks on account of the said notes and check, as well as the payment to Evans of his personal indebtedness. The consideration stated was $20,333; $5,000 on its execution and the balance in installments. Evans agreed to do three things:

(1) To secure releases from the railway company discharging Leib and the banks from all claims upon the notes, and to release Leib from Evans' individual claim.

(2) To apply $2,000 of the first payment under the agreement to release the Franklin National Bank suit; Leib thereafter to have the right to indicate which claims of the railway company against the banks the money should be applied to, so as to release said banks as funds would be furnished.

(3) To sell and transfer to Leib, the securities which Evans held, and which were bought in at the auction sale above referred to.

Under this agreement, Leib paid $20,333, and, in addition, $2950 to cover counsel fees and expenses of the railway company incurred in the suits against the banks. As a result, the banks were released from all liability. The banks were not parties to the agreement, or to the negotiations resulting in the agreement, and Leib believed the moneys paid by him would be paid to the railway company in discharge of the claims against the banks, the balance being sufficient to pay the personal indebtedness of Evans. The railway company informed the plaintiff, in December, 1920, that the total amount received by it in settlement of the suits against the banks was $10,057.95, and, after giving credit for the payment of $5,000 by plaintiff, the balance still due the railway company in its account with Leib was more than $3,000. It does not appear that plaintiff, at the time it received this information, had knowledge of the aforesaid agreement of February 11, 1920, and did not until later ascertain the facts in relation thereto. It appears that Leib did not know when he signed the agreement that plaintiff had paid $5,000 as his surety. It seems plain that the agreement, and the payments made thereunder, were for the purpose of discharging Leib's entire liability to the railway company and his surety. While the railway company was not a nominal party to the agreement, it was the duty of Evans, who clearly appears to have been acting for the railway, to pay the company the full amount of its claims, and it would appear that Leib and the plaintiff were entitled to hold Evans and the railway company responsible for such application of the payments, so that Leib should be relieved from his obligations to reimburse the plaintiff for this $5,000. The purpose of the bill was discovery by Evans and the railway company as to all sums received by them, or either of them, from Leib, pursuant to the aforesaid agreement, and the application

of the said sums, that a decree might be entered directing Evans and the railway company to pay the plaintiff an amount not exceeding $5,000, with interest, by which the said payments, made by Leib, may have exceeded the claims of the railway company, in its duties against the banks, and the personal indebtedness from Leib to Evans.

After hearing, the learned court, in an opinion filed, dismissed the bill.

As we understand, the chief basis of the court's action in dismissing the bill is that the railway company was not a party to the agreement. This position appears in the following finding in the court's opinion: "Thus the situation presented, stated generally, is as follows: 'The President of a corporation, by selling to a third party certain securities belonging to himself obtains enough money from that third party to enable him to pay a number of claims upon which the corporation has sued various banks. He has agreed with the third party that he will get these claims settled and the corporation's release of them. On what theory the payment to the president as an individual can be treated as a payment to the corporation or, for that matter, how the agreement imposes any obligations upon the corporation or gives it any rights whatever, I am unable to see.' "

Again the court says: "I hold that the payment to Evans was not payment to the Railway Company and that the Railway Company had no rights under the agreement."

With this conclusion, we cannot agree. It would appear plain that the agreement was made for the express purpose of effecting a settlement of the claims of the railway company against the banks and Leib; the latter being primarily liable. The agreement resulted in a settlement taking place during the trial of one of the cases; it was participated in by the president, the vice president, and the counsel of the railway company, and by Leib and his counsel; it being an unquestioned fact that Evans was the principal stockholder of the railway company, as well as the president, and largely in control of the company. How, under the circumstances, the railway company could not be regarded as a party, it is difficult to see. How the agreement could operate as a release to the railway company unless it were regarded as a party, is hard to conceive. The agreement clearly contemplates the payment by Leib of the full amount of his indebtedness to the railway company, on account of the notes. The amount of the consideration expressed was exactly the aggregate of the claims on the notes and check and the amount of the indebtedness due from Leib to Evans personally, for which the securities delivered to Leib, under the agreement, had been previously pledged. The figures are unexplainable except on the theory that Leib was to pay the indebtedness due to the railway company and the amount of his personal indebtedness to Evans. If any doubt remained, this seems to be solved by the provision that out of the first payment $2,000 "shall be applied by Evans and the Schuylkill Railway Company to the discharge of the obligation of the Franklin National Bank upon the suit pending against that bank and called for trial this date."

This was a direct application of the full amount of the claim to its discharge, and no such application could be made unless the money were treated as received by the railway company, or for its account. There is no conceivable way in which the railway company could join in applying the money, as stipulated in the agreement, without actually receiving it. Leib was given the additional right to indicate to what claims against the banks the money shall be applied, so as to release the banks from time to time as said funds were furnished. One cannot read the correspondence between Leib and counsel representing both Evans and the railway company without reaching the conclusion that the payments referred to were understood by all parties to be payments applicable to their full extent to the claims specified by Leib. To remove all possible question as to the relationship of the parties and the meaning and purpose of their settlement, in August and September correspondence took place between Leib and Mr. White, attorney for the railway, in relation to the release of the remaining unpaid claim against the Philadelphia National Bank upon conditions to be agreed upon between the parties. Leib had then paid, under the agreement, about $16,000, and wanted an extension. A conference was held in Mr. White's office on October 8, 1920, to arrange the terms of the extension. At this conference, White, Evans, and Leib were present, and a settlement was reached and a statement prepared by Evans with an accompanying letter. It showed Leib's individual indebtedness to Evans, with interest, for which Evans had held securities as col-

18

lateral, also a statement of Leib's indebtedness to the railway company, with interest, certain items being added to this indebtedness, including the sum of $2,950, above referred to. There could be no clearer demonstration that the settlement between Leib and Evans was in fact a settlement between all three parties concerned, as a result of which Leib was to pay, and did pay, to Evans, for the account of the railway, the full amount of its claim against him on the notes and check in question, and, in addition, the full amount of his individual liability to Evans.

No reference is made to this statement by the learned trial judge, although its significance is almost conclusive of the question.

■■ If the foregoing represents the true situation and the relation of the parties, the moneys being paid by Leib in full, the fact that they were not applied by Evans as directed affords no ground for either of the defendants to deny that the sums due on the notes were, in fact, collected from Leib. The circumstances force the conclusion that the railway company, being under the control of Evans, must be presumed to have waived its right to demand the full amount paid him for its account. Such waiver of its right cannot affect the obligation it owed to the plaintiff to reimburse the latter for its loss on the surety bond. We cannot agree with the suggestion of the learned trial judge that, whatever the plaintiff's rights are, they can rise no higher than the rights of Leib; this for the reason that plaintiff's rights were independently created by the agreement between it and the railway company. Nor can we agree with the suggestion, that Leib had no interest in the disposition of the fund created by his payments, because it is obvious that, if they were not applied to the discharge of his indebtedness to the railway company in full, he would be under obligation to reimburse the surety company for the $5,000 payment which the surety made in his behalf.

For the foregoing and other reasons which might be advanced, we think the learned trial court erred in dismissing the bill.

The order so entered is reversed, and the bill reinstated, with directions to proceed in accordance with law.

BUFFINGTON, Circuit Judge, dissents.