### EVANS v. FIDELITY & DEPOSIT CO. OF MARYLAND.
### No. 4540.

Circuit Court of Appeals, Third Circuit.
April 17, 1931.

Thos. R. White and White, Parry, Schnader & Maris, all of Philadelphia, Pa., for appellant.

John Murdoch Clarke and Francis B. Bracken, both of Philadelphia, Pa. (Morgan, Lewis & Bockius, of Philadelphia, Pa., of counsel), for appellee.

Before BUFFINGTON and DAVIS, Circuit Judges, and THOMSON, District Judge.

THOMSON, District Judge.

This appeal of Powell Evans raises the question whether the court below correctly construed the opinion of this court rendered on the prior appeal [42 F.(2d) 15], in entering a decree pursuant thereto, against defendants Powell Evans and the Schuylkill Railway Company. The appellant contends that the decree should have been entered against the railway company alone. The facts of the case were so fully stated in the former opinion of this court as to render unnecessary any lengthy restatement of them here.

The bill was against Leib, Evans, and the railway company for the discovery by Evans and the railway company of all moneys received by them under a certain agreement for the payment to the plaintiff of the sum of $5,000. Leib, the general manager of the railway company, gave the company his bond, in the sum of $5000, with the plaintiff as surety, for the faithful performance of his duties. Leib became a defaulter by forging and discounting notes and a check, aggregating $17,500, given to him by the railway company, for the payment of taxes. As a result of the defalcation, the surety company paid to the railway company, the full amount of the bond, on condition that the railway company would prosecute its claims on the forged notes and check against the banks, and, in case of recovery from the banks, or from Leib, of a sum more than enough, with the amount paid on the bond, to fully compensate the railway company for its loss, the latter would pay over such excess to reimburse the plaintiff for the $5,000 paid on the bond. For this purpose, suits were commenced and prosecuted against the banks. Leib also owed Evans a personal indebtedness of $1,500, for which he had delivered to the latter certain securities. These were afterwards sold by Evans and purchased by him for an inadequate price.

During the pendency of the first suit, Evans, who was clearly acting for himself and the railway company, of which he was president and principal stockholder, entered

into a written agreement with Leib. The consideration was $20,333, in which Evans agreed to do three things:

First. To secure releases from the railway company discharging Leib and the banks from all claims upon the notes, and to release Leib from Evans' individual claim.

Second. To apply $2,000 of the first payment under the agreement to release the Franklin National Bank suit, which was then pending, Leib thereafter to have the right to indicate which claims of the railway company, against the banks the money should be applied to, so as to release the banks as funds were furnished.

Third. To sell and transfer to Leib the securities which Evans held, and which were bought in at the sale above referred to.

The amount specified in the agreement was paid by Leib in full to Evans, and, in addition thereto, Leib paid $2,950, expenses incurred by the railway company against the banks. The contract was intended to provide for payment by Leib of all sums claimed by the railway, as well as the payment to Evans of his personal indebtedness. The money being paid by Leib to Evans, the banks were released from all liability. While the railway company was not a nominal party to the agreement, it was the duty of Evans, who was acting for the railway company, to pay the latter the full amount of its claims, and the plaintiff was entitled to hold Evans and the railway company for the proper application of the payment, so that Leib would be relieved from his liability to reimburse the plaintiff for the $5,000, which it had paid.

Under the circumstances, payment to Evans was payment to the railway. It is perfectly plain that the purpose of the agreement was to effect a settlement of the claims of the railway company against the banks and Leib. The settlement was participated in by the president, vice president, and counsel of the railway company, and by Leib and his counsel. The amount of the consideration was exactly the aggregate of the claims on the notes and check and the personal indebtedness due to Evans. The settlement was clearly one between all three parties concerned, in which Leib made payment in full. If, by some arrangement between the railway and Evans, the former did not receive its share in full, this is not important, as the company must be presumed to have waived its right to demand the full amount paid to Evans for its account. Such waiver can in no manner affect the obligation it owed to reimburse the plaintiff for its loss on the bond. We see no reason why the decree should not run against both Evans and the railway company, under the pleadings and evidence in the case. The bill for an accounting was against both Evans and the railway company. The agreement under which the liability arose, was entered into by Evans. The liability of the railway arose under the contract notwithstanding the company was not a party to it, but because Evans was acting for the company as well as for himself. The moneys were paid to him, which were received from Leib, and he was responsible as between him and the plaintiff for its proper distribution.

We are of opinion that the court below properly interpreted the opinion of this court in entering a decree against both Evans and the railway company.

The decree as entered is affirmed.